Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EN EL ASUNTO DE:<br><br>ÁLIDA I. LARA NIEVES<br>ABOGADA SENIOR<br><br>Recurrente<br><br><br>ADMINISTRACIÓN DE<br>SEGUROS DE SALUD<br><br>Recurrido | TA2026RA00072 | *Revisión de Decisión Administrativa* procedente de la Administración de Seguros de Salud<br><br>Sobre: Reglamento de Personal de ASES y Manual de Conducta, Medidas Correctivas y Acciones Disciplinarias de ASES |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 21 de abril de 2026.

El 19 de febrero de 2026, compareció ante este Tribunal de Apelaciones, la licenciada Álida I. Lara Nieves (en adelante, licenciada Lara Nieves o parte recurrente), por medio de *Petición de Revisión Judicial*. Mediante esta, nos solicita que revisemos la *Resolución Final* emitida y notificada el 20 de enero de 2026, por el licenciado Carlos A. Santiago Rosario, director ejecutivo de la Administración de Seguros de Salud (ASES). En virtud del aludido dictamen, la ASES suspendió de empleo y sueldo a la parte recurrente, por un término de cinco días laborables.

Por los fundamentos que adelante se exponen, se *confirma* la resolución recurrida.

### I

De acuerdo al expediente, el 22 de octubre de 2025, el licenciado Carlos A. Santiago Rosario, director ejecutivo de la ASES (en adelante, licenciado Santiago Rosario), remitió a la licenciada

Lara Nieves una misiva donde le notificó la formulación de cargos e intención de suspensión de empleo y sueldo. Conforme a la misiva, se le notificó a la parte recurrente la intención de imposición de media disciplinaria, por haber incurrido en múltiples violaciones a las normas de conducta y desempeño, aplicables a los empleados de la ASES. De igual forma, la ASES concluyó que, la licenciada Lara Nieves violentó las disposiciones éticas aplicables a la profesión legal, como aquellas aplicables a los empleados públicos del Gobierno de Puerto Rico. Según la carta de intención, la parte recurrente "insistió injustificadamente en no cumplir y evadir su obligación de emitir certificaciones de corrección del contenido de contratos, y/o ha expedido certificaciones inoficiosas". Asimismo, describió varios sucesos relacionados a las alegadas infracciones.

Más adelante, la parte recurrente remitió una carta con fecha del 3 de noviembre de 2025, al licenciado Santiago Rosario, mediante la cual negó las faltas imputadas en las alegaciones en su contra. Lo anterior, por alegaciones incorrectas y/o exageradas, y por ampararse en requisitos inexistentes. Sostuvo que, la suspensión de empleo y sueldo resultaría ser caprichosa, arbitraria y contraria a las disposiciones contenidas en el Manual de Conducta de ASES y la legislación aplicable. Asimismo, solicitó dejar sin efecto la suspensión de empleo y sueldo de la licenciada Lara Nieves, y suspender los procedimientos disciplinarios en su contra. En la alternativa, solicitó la celebración de una vista administrativa informal con el propósito de dilucidar las imputaciones en su contra ante un oficial examinador. Además, le requirió al licenciado Santiago Rosario proveer una descripción de las pruebas con las que contaba para sustentar las imputaciones realizadas en la formulación de cargos a la parte recurrente.

En igual fecha, el licenciado Javier J. Dilán, Oficial Examinador, expidió *Citación*, donde citó a las partes para una vista administrativa informal.

Así las cosas, la parte recurrente presentó *Escrito de Argumentación Suplementaria*. En dicho escrito, volvió a negar las alegaciones en su contra expuestas en la carta de formulación de cargos. Argumentó haber cumplido con sus obligaciones y labores de forma responsable y puntual. Añadió que, previo a la formulación de cargos, nunca se le había "llamado la atención", y que, todas sus evaluaciones fueron excelentes. Sostuvo que, no existía requisito reglamentario o estatutario, ni de la Hoja de Funciones del Puesto de Abogado Senior que requiera la certificación de los contratos o que especifique el contenido requerido para realizar la certificación. La licenciada Lara Nieves aseguró no haberse negado a certificar la corrección de los contratos asignados a ella y que, las certificaciones provistas por ella en tales contratos no eran inoficiosas. Además, levantó varias defensas afirmativas en torno a algunas de las situaciones expuestas en las alegaciones de la carta de formulación de cargos.

Por otro lado, en la aludida moción, la parte recurrente adujo que, la formulación de cargos no cumplía con el requisito de notificación adecuada exigido por el derecho constitucional a un debido proceso de ley. Señaló que, la sanción disciplinaria que se le intentaba imponer a la parte recurrente no estaba contemplada en las faltas imputadas. De igual manera, arguyó que, la formulación de cargos no contenía una descripción de la prueba de ASES en contra de la licenciada Lara Nieves y la descripción de la prueba brindada por el Oficial Examinador en la *Citación* era insuficiente en su contenido y representaba un conflicto. Asimismo, argumentó que, el Reglamento de Personal de ASES no cumplía con las exigencias constitucionales del debido proceso de ley. Lo anterior,

en la medida en la que, no proveía un procedimiento de vista formal, y se limitaba a solicitar revisión judicial ante el Tribunal de Apelaciones posterior a la celebración de la vista informal. Finalmente, le solicitó al oficial examinador que recomendara a la ASES no imponer las sanciones sugeridas en la carta d formulación de cargos.

El 11 de diciembre de 2025, el Oficial Examinador emitió el *Informe de Hallazgos y Recomendación*. Mediante este, esbozó los siguientes hechos que, a su juicio, fueron probados e indisputados:

1. La Lcda. Lara Nieves ocupa un puesto de carrera de Abogada S[e]nior, clase D1100, en la Oficina de Asuntos Legales de la ASES. Según la descripción oficial del puesto, sus funciones requieren cumplir con los sistemas y procedimientos legales aplicables y realizar estudios y análisis de leyes, reglamentos y situaciones relacionadas con la corporación. El puesto incluye la responsabilidad de redactar y revisar todo tipo de documentos legales, entre ellos contratos, memorandos, cartas y comunicaciones dirigidas a entidades como la Oficina de Gerencia y Presupuesto, la Junta de Supervisión Fiscal, Medicaid y CMS. También, exige conocimiento de las normas, leyes y reglamentos que rigen las operaciones de la corporación y de los principios de la profesión legal, así como habilidad para investigar, recopilar información pertinente y utilizarla adecuadamente en los procesos legales. Finalmente, la descripción de la clase aclara que la información contenida constituye una guía general y que no debe interpretarse como un inventario exhaustivo de todas las funciones, deberes y responsabilidades, lo que permite que se asignen tareas adicionales relacionadas con la revisión y certificación de documentos cuando así se requiera.

2. El Director Ejecutivo, por conducto de la Sra. Gloria Auffant Ortiz, informó a los abogados del área legal que debían certificar que revisaron el contrato y que cumple con el ordenamiento.

3. A excepción de la Lcda. Lara Nieves, todos los abogados del área legal siguieron las instrucciones para certificar los contratos según les fueron solicitadas.

4. El 15 de octubre de 2025, la Lcda. Lara Nieves suscribió la siguiente declaración inoficiosa, pretendida por la empleada como una certificación de corrección del contenido del contrato 2026-000035:

[e]n el desempeño de las funciones como empleado público en el puesto de carrera como Abogado S[e]nior en la ASES, se redactó el contrato 2026-000035 correspondiente a Dr. Felipe Carro Rivera, el cual se otorga de manera excepcional. La Lcda. Álida Lara Nieves redactó el antes mencionado contrato según las instrucciones para la redacción de este provistas por la Oficina Ejecutiva y con la información suplida por las Áreas de la ASES, que intervienen en el proceso de contratación gubernamental. Las cláusulas del contrato, a mi mejor entendimiento están redactadas de conformidad con el ordenamiento jurídico vigente y aplicable. La información provista por las Áreas de ASES, que intervienen en el proceso de contratación gubernamental se toma por buenas y correctas tras ser remitidas por las personas con la pericia para ello. **Esta suscribiente no tiene el acceso, ni la pericia para corroborar la corrección y veracidad de la información suministrada por las distintas Áreas de la ASES**.

5. El 30 de septiembre de 2025, los documentos de la enmienda de Abarca habían sido entregados a la Oficina de Asuntos Legales y la revisión del contrato había sido asignada a la Lcda. Lara Nieves.

6. El jueves, 2 de octubre de 2025, a las 2:42 p.m., la Lcda. Lara Nieves escribió a la Lcda. Martha Vélez solicitándole copia de la enmienda de Abarca "para poder terminar el proceso", indicando que le habían informado que dicha enmienda ya había sido sometida a la FOMB.

7. Minutos después, la Lcda. Leilani Valle Donato, Adjudicadora Principal de Propuestas, le respondió remitiéndole el borrador oficial de la enmienda, señalando que ese documento había sido trabajado previamente entre ella y la Lcda. Vélez, enviado a la FOMB el 29 de julio de 2025 y aprobado el 25 de agosto de 2025, y aclarando además que, según el Área de Finanzas, ya había sido sometido para aprobación de OGP. Como parte de esa comunicación, la Lcda[.] Valle también adjuntó una cadena de correos de la Lcda[.] Ziara Bittman, Abogada principal, con la FOMB, el cual incluía la documentación requerida, confirmando que la División Legal ya contaba con el expediente completo y oficial de la enmienda.

8. El lunes, 6 de octubre de 2025, a las 9:04 a.m., la Lcda. Lara Nieves escribió al Lcdo. Amábex Hernández Camacho remitiéndole nuevamente el correo enviado por la Lcda. Leilani Valle Donato y explicando que, según surgía de dicho mensaje, tanto la Lcda. Valle como la Lcda. Vélez habían trabajado el contrato y lo habían sometido a la FOMB. Indicó que la Lcda. Valle le explicó que trabajó el documento para adelantar el proceso, pues era necesario para un procedimiento de RFP

que estaban realizando. Añadió que los abogados de la Oficina de Asuntos Legales se les solicita emitir certificaciones de los contratos que cada uno trabaja, pero que en este caso no tenían forma de corroborar ni certificar que lo sometido y aprobado por la FOMB fuera correcto, dado que dicho trabajo se realizó fuera de la Oficina de Asuntos Legales. Expresó además que, en su criterio, debía ser la abogada que trabajó la enmienda sometida ante FOMB y aprobada por FOMB y OGP quien certificara la misma, reiterando que no estaba en posición de certificarla porque no contaba con la información necesaria para la redacción de la enmienda.

9.  Aun cuando el 2 de octubre de 2025 la Lcda. Lara Nieves recibió toda la información oficial de la enmienda, incluyendo el borrador trabajado, la aprobación de la FOMB y la documentación enviada por la propia División Legal a través de la Lcda. Bittman, insistió en que no podía revisar ni corroborar el contenido. Pese a tener el expediente completo en su poder, reiteró que "no estaba en posición de certificar" la enmienda y que debía hacerlo quien la había trabajado, negándose así a cumplir con la verificación básica que cualquier abogado que trabaje contratación gubernamental puede hacer.

10.  El martes, 7 de octubre de 2025, a las 8:33 a.m., la Lcda. Álida Lara Nieves volvió a pedir, ahora a través del Lcdo. Amábex Hernández, la misma información que ya había recibido directamente de la Lcda. Valle el 2 de octubre. Aunque alegó que, por instrucciones del Director Ejecutivo, debía canalizar las comunicaciones mediante el "enlace", nada impedía que como Abogada S[e]nior gestionara o verificara esos documentos directamente, máxime cuando ya obraban en su poder.

11.  El martes, 7 de octubre de 2025, a las 10:52 a.m., el Lcdo. Amábex Hernández Camacho escribió a la Lcda. Leilani Valle Donato a solicitud de la Lcda. Lara Nieves. En su mensaje, indicó que la Lcda. Lara necesitaba la información utilizada en la redacción de la enmienda de Abarca a fin de corroborarla y completar el proceso.

12.  Ese mismo día, a las 7:19 p.m., la Lcda. Valle respondió directamente a la Lcda. Lara Nieves señalando que intentó comunicarse por vía telefónica, sin lograrlo, y solicitó que se le indicara qué información adicional se requería.

13.  El martes, 14 de octubre de 2025, a las 10:33 a.m., la Lcda. Lara Nieves volvió a escribir a la Lcda. Valle, señalando que había estado fuera de la oficina y que había solicitado al Lcdo. Hernández gestionar la documentación en su ausencia. Indicó que necesitaba los números utilizados para el

borrador, las certificaciones de fondos, las certificaciones de Recursos Humanos y "toda la documentación necesaria para la redacción del mencionado borrador."

14. Ese mismo día, a las 4:32 p.m., la Lcda. Valle contestó adjuntando la información solicitada nuevamente, incluyendo los números utilizados para el draft según el Attachment 10, los documentos relacionados con la certificación de fondos, la certificación de Recursos Humanos aplicable al contrato original y los documentos requeridos por la FOMB, entre ellos el Appendix C y el Appendix B. Del intercambio de correos se desprende que dicha información no constituía un insumo nuevo, sino la misma documentación que ya había sido remitida a la Lcda. Lara Nieves.

15. Del análisis de la secuencia de comunicaciones y de la documentación intercambiada, se observa que la Lcda. Lara Nieves contaba con la información necesaria y que, como Abogada S[e]nior, tenía la pericia y responsabilidad para revisar los documentos y verificar la correspondencia entre el borrador de la enmienda y los anejos sometidos a la FOMB.

16. La certificación requerida implicaba confirmar datos ya provistos y disponibles en el expediente, una gestión básica dentro de las funciones del puesto. No obstante, los correos muestran que la empleada continuó posponiendo la revisión y reiterando solicitudes de material que ya obraba en su poder, lo que tuvo el efecto de atrasar el proceso de contratación.

17. Aun en el supuesto de que entendiera que le faltaba algún documento para completar su revisión, la Lcda. Lara Nieves tenía la facultad y responsabilidad, como Abogada S[e]nior, de comunicarse directamente con las áreas correspondientes, ya fuera Recursos Humanos, Finanzas u otra dependencia pertinente, para obtenerlo. La encomienda provenía del Director Ejecutivo y formaba parte de sus funciones esenciales. Sin embargo, los correos muestran que, en lugar de gestionar directamente la información necesaria, la empleada intentaba trasladar su responsabilidad a otros.

18. El 14 de octubre de 2025, la Lcda. Lara Nieves remitió al Director Ejecutivo un informe de asuntos pendientes que le había sido requerido el 7 de octubre de 2025. En dicho informe, y respecto al caso de la enmienda del contrato de los rebates de Abarca, la empleada reiteró que dicha enmienda había sido trabajada por las Lcdas. Valle y Vélez fuera de la Oficina de Asuntos Legales, que la División Legal no contaba con la información utilizada en la redacción y que, por ello, le era "imposible" certificar la corrección del documento.

Señaló que había solicitado a través del Lcdo. Amábex Hernández la información necesaria, pero que al momento "no hemos sido beneficiados con la misma".

19. Sin embargo, tal como surge del expediente y de los correos previos, la documentación relativa a la enmienda, incluyendo el borrador trabajado por la Lcda. Valle, los anejos sometidos a la FOMB y la cadena de correos de la Lcda. Ziara Bittman, ya le había sido remitida previamente. La tramitación de la enmienda ante la FOMB, así como la contestación de las preguntas y requerimientos de dicha entidad, fue realizada por la propia Oficina de Asuntos Legales a través de la Lcda. Bittman, con copia al Sr. José Nazario. A pesar de ello, el 14 de octubre la Lcda. Lara Nieves volvió a consignar que la ASES no había recibido los documentos necesarios para otorgar la enmienda y que la misma no había pasado por el área legal, afirmaciones incorrectas que no se corresponden con la documentación enviada ni con la gestión efectuada por la División Legal.

20. Nótese que en todas sus comunicaciones escritas la Lcda. Lara Nieves se limita a expresar de manera general que "faltan documentos" o que "no se ha recibido la información necesaria", sin identificar en ningún momento qué documento particular necesitaba para completar la revisión. Sus comunicaciones se concentran en señalar que la certificación o revisión debía ser realizada por la Adjudicación Principal de Propuestas por haber trabajado inicialmente un borrador, en lugar de precisar cuál era la información concreta que alegadamente necesitaba para cumplir con su encomienda.

21. El 16 de octubre de 2025, la Lcda. Lara Nieves, en reunión con la Sra. Lymari Colón Rodríguez, Subdirectora Ejecutiva de la ASES, le informó que no había podido completar la certificación de servicio de "*Supplemental Rebates*" del contrato de Abarca Health (2023-000048A) para la firma del Director Ejecutivo.

22. Durante la anterior reunión, la empleada argumentó que no podía certificar la enmienda al anterior contrato debido a que le faltaban documentos, y que no contaba con la documentación respecto a la aprobación de la Junta de Supervisión Fiscal (FOMB).

23. Se le tuvo que aclarar a la Lcda. Lara Nieves que toda la documentación requerida por la FOMB y que resultó en la aprobación de la enmienda en el mes de agosto de 2025, le había sido remitida, mediante correo electrónico.

24. En la reunión, a la empleada también se le explicaron los detalles de los requerimientos para

el proceso de enmienda. No obstante, entonces, la empleada añadió que no contaba con la aprobación de la Oficina de Gerencia y Presupuesto (OGP) de la enmienda.

25. La Subdirectora identificó los documentos necesarios con la aprobación de OGP en el expediente al que la empleada tenía acceso. El 30 de septiembre de 2025, los referidos documentos habían sido entregados a la Oficina de Asuntos Legales.

26. Ante las explicaciones provistas a la Lcda. Lara Nieves, se le requirió que expusiera en detalle la información adicional que requería para certificar la enmienda al contrato.

27. La Lcda. Lara Nieves utilizó el pretexto de que no podía realizar la referida certificación hasta que revisara el expediente y, posteriormente, notificaría si requería algún documento adicional. Ello, a pesar de que la Lcda. Lara Nieves había tenido el asunto y el expediente asignado, desde el 30 de septiembre de 2025 y, en ese momento, ya era el 16 de octubre de 2025.

28. El 16 de octubre de 2025, la Lcda. Lara Nieves volvió a suscribir otra certificación inoficiosa. En esta ocasión para el contrato 2023-000048A:

[e]n el desempeño de las funciones como empleado público en el puesto de carrera como Abogado S[e]nior en la ASES, se revisó el contrato 2023-000048A correspondiente a la enmienda del contrato de Abarca. La Lcda. Álida Lara Nieves, revisó el antes mencionado contrato con la información suplida por las Áreas de la ASES, que intervienen en el proceso de contratación gubernamental. Las cláusulas del contrato, **a mi mejor entendimiento** están redactadas de conformidad con el ordenamiento jurídico vigente y aplicable y el mismo está aprobado por la Junta de Supervisión Fiscal. La información provista por las Áreas de ASES, que intervienen en el proceso de contratación gubernamental **se toma por buenas y correctas** tras ser remitidas por las personas con la pericia para ello. **Esta suscribiente no tiene el acceso, ni la pericia para corroborar la corrección y veracidad de la información suministrada por las distintas Áreas de la ASES**.

29. En cuanto a la anterior certificación, la Lcda. Lara Nieves afirma que "no tiene el acceso ni la pericia" para corroborar la corrección y veracidad de la información utilizada en el contrato. Sin embargo, esta afirmación resulta incompatible con las funciones esenciales de la clase de Abogada S[e]nior, el cual exige expresamente la capacidad de analizar hechos y documentos de acuerdo con leyes, reglamentos, sistemas y procedimientos establecidos y la responsabilidad de redactar y

revisar contrato, certificaciones y comunicaciones legales dirigidas a entidades como OGP y la Junta de Supervisión Fiscal. El puesto requiere también investigar y recopilar información pertinente.

30. El expediente administrativo demuestra que la Lcda. Lara Nieves sí tenía acceso a la documentación necesaria para verificar la correspondencia entre el contrato y la información suministrada, ya que dicha documentación le fue remitida por la Lcda. Leilani Valle Donato, junto con el borrador oficial revisado por la División Legal y los anejos sometidos a la FOMB. Además, la Lcda. Lara Nieves tenía la facultad profesional, conforme a las exigencias de su puesto, de solicitar directamente información adicional a cualquier área pertinente, incluyendo Recursos Humanos o Finanzas, de entenderlo necesario.

31. Por tanto, la aseveración de que carecía de pericia o acceso para corroborar la información provista no guarda relación con las exigencias inherentes al puesto ni con el récord documental que evidencia que la información ya estaba en su posesión y que, en caso de necesitar algún dato adicional, tenía plena capacidad para gestionarlo directamente.

32. Lo anterior provocó que el Director Ejecutivo tuviera que suscribir la enmienda del Contrato Núm. 2023 000048A el 16 de octubre de 2025 debido al atraso en la gestión de revisión y trámite por parte de la Lcda. Lara Nieves.

33. La falta de diligencia de la empleada y el retraso en la tramitación de la enmienda ocasionaron que la ASES dejara de percibir ingresos al 16 de octubre de 2025 e interrumpieron el cumplimiento oportuno de los deberes ministeriales de la corporación.

34. Durante la vista administrativa informal, la empleada expuso su versión de los hechos, negó todas las imputaciones formuladas en su contra, sostuvo que nunca recibió instrucciones claras ni uniformes sobre el formato o contenido de las certificaciones requeridas, alegó que las certificaciones emitidas cumplían, a su juicio, con el ordenamiento jurídico y con las recomendaciones de la Oficina del Contralor, e intentó justificar que sus actuaciones respecto a la enmienda del contrato 2023-000048ª, afirmando que no incurrió en omisión de deber alguno.

Esbozó además, los siguientes cargos formulados por la ASES en contra de la licenciada Lara Nieves:

1. **Falta 23:**

   - Desempeñar las funciones, deberes y obligaciones de forma negligente,

descuidada, deficiente o de pobre calidad, cantidad o demora irrazonable, fuera de tiempo razonable y/o establecido, etc.

2. **Falta 28:**

   - Dejar injustificadamente de cumplir con las instrucciones de un supervisor.

3. **Falta 31:**

   - No cumplir con los niveles de productividad, según los estándares establecidos en su área de trabajo.

4. **Falta 39:**

   - Violar o incumplir con las normas, políticas o procedimientos establecidos en leyes o ASES, a menos que dicha norma, política o procedimiento disponga otra acción.

5. **Falta 55:**

   - No proveer información completa y correcta, requerida por ASES.

6. **Falta 109:**

   - Negligencia o ineficiencia en el uso y manejo indebido de fondos y bienes de ASES o que ASES incurra en pérdidas de fondos o señalamientos graves en auditorías relacionadas a violaciones de ley.

7. **Falta 151:**

   - Violación a la Ley de Ética Gubernamental, sus reglamentos o cualquier otra reglamentación relacionada a la ética de los empleados públicos.

8. **Falta 182:**

   - Insubordinación o falta de respeto a un supervisor, incluyendo la negativa de hacer un trabajo o desobedecer órdenes e instrucciones del supervisor o un funcionario mayor jerarquía compatibles con su autoridad.

En cuanto a las consecuencias disciplinarias de una primera falta a las disposiciones descritas son:

1. **Falta 23:**

   - **Primera infracción (mínimo a máximo)**: Reprimenda escrita a Suspensión de empleo y sueldo hasta quince (15) días.

2. **Falta 28:**

- **Primera infracción (mínimo a máximo)**: Suspensión de empleo y sueldo desde tres (3) días hasta quince (15) días.

3. **Falta 31:**

- **Primera infracción (mínimo a máximo)**: Reprimenda escrita a Suspensión de empleo y sueldo hasta quince (15) días.

4. **Falta 39:**

- **Primera infracción (mínimo a máximo)**: Reprimenda escrita a Suspensión de empleo y sueldo hasta quince (15) días o destitución.

5. **Falta 55:**

- **Primera infracción (mínimo a máximo)**: Reprimenda escrita.

6. **Falta 109:**

- **Primera infracción (mínimo a máximo)**: Destitución.

7. **Falta 151:**

- **Primera infracción (mínimo a máximo)**: Reprimenda escrita a Suspensión de empleo y sueldo hasta treinta (30) días.

8. **Falta 182:**

- **Primera infracción (mínimo a máximo)**: Suspensión de empleo y sueldo desde tres (3) días hasta quince (15) días.

Consecuentemente, el Oficial Examinador concluyó su informe como sigue:

En fin, la conducta de la abogada reveló una negativa reiterada a realizar la certificación requerida y una dilación injustificada en el cumplimiento de sus funciones esenciales. Su postura no se sostiene frente al expediente ni ante la hoja de funciones del puesto, y evidencia tanto insubordinación como falta de diligencia, lo que finalmente contribuyó al retraso en la tramitación de la enmienda y a la pérdida de ingresos para la ASES.

De conformidad con la Sección 3.2(23) del Manual de Conducta, Medidas Correctivas y Acciones Disciplinarias, las conductas acreditadas en este caso constituyen una falta grave. El Manual define falta grave como aquella infracción a normas y reglamentos

que puede ocasionar serios perjuicios a la ASES, a su personal, a las personas que reciben servicios de la agencia, a las compañías aseguradoras, proveedores u organizaciones de servicios de salud que contratan con la ASES, o a la propiedad de la corporación. Se trata de conductas que ameritan pronta atención e imposición de medidas disciplinarias porque atentan contra la seguridad, la moral, la salud o la misión institucional. La definición dispone además que, debido a la naturaleza de estas faltas, la sanción mínima aplicable es una suspensión de empleo y sueldo **por treinta días laborables**, pudiendo incluso ascender hasta la destitución. A la luz del expediente administrativo, la combinación de insubordinación, incumplimiento de deberes esenciales, dilación injustificada y la pérdida de fondos públicos en este caso encaja plenamente dentro del concepto de falta grave descrito en el Manual, por lo que la sanción recomendada se ajusta a los criterios normativos aplicables.

Consecuentemente, y a base de la totalidad del expediente administrativo, al amparo de la Ley Núm. 72, *supra,* del Reglamento de Personal de la ASES y del Manual de Conducta, Medidas Correctivas y Acciones Disciplinarias de la ASES, se recomienda concluir que la Lcda. Lara Nieves incurrió en las faltas disciplinarias números 23, 28, 31, 39, 109, 151 y 182. En atención a la naturaleza y gravedad de las conductas acreditadas, se recomienda la imposición de la medida disciplinaria de suspensión de empleo y sueldo por un término de treinta días laborables.

Finalmente, ASES emitió la *Resolución Final* cuya revisión nos atiene, en la cual resolvió:

Por cuanto, se acogen las recomendaciones contenidas en el Informe del Oficial Examinador, así como lo dispuesto en la comunicación titulada Formulación de Cargos: Intención de Suspensión de Empleo y Sueldo, y habiéndose revisado en su totalidad el expediente administrativo, conforme a la Ley Núm. 72-1993, según enmendada, conocida como "Ley de la Administración de Seguros de Salud de Puerto Rico", al Reglamento de Personal de ASES y al Manual de Conducta, Medidas Correctivas y Acciones Disciplinarias de ASES, se dicta la presente Resolución Final mediante la cual se impone la siguiente medida disciplinaria:

- **Suspensión de empleo y sueldo por un término de cinco (5) días laborables.**

- **La suspensión será efectiva el miércoles, 21 de enero de 2026 y usted deberá reportarse a su área de trabajo nuevamente, miércoles, 28 de enero de 2026.**

Inconforme con lo resuelto, la parte recurrente acudió ante este foro revisor mediante *Petición de Revisión Judicial*, donde esbozó los siguientes señalamientos de error:

**Primer Error:** Erró la autoridad nominadora de la ASES al imponer una sanción disciplinaria mediante un procedimiento que violentó los derechos constitucionales de la parte recurrente.

**Segundo Error:** Erró la autoridad nominadora de la ASES y conminó el derecho constitucional de la Lcda. Lara Nieves a un Debido Proceso de Ley al no proveerle una descripción adecuada de la prueba en su contra previo o durante la celebración de la vista administrativa informal.

**Tercer Error:** Erró la autoridad nominadora de la ASES al imponer una sanción disciplinaria y no ofrecerle, en violación al Debido Proceso de Ley, la oportunidad, anterior o posterior a la imposición de la medida disciplinaria, de un proceso administrativo formal a base de un récord administrativo completo y con conocimiento completo de la evidencia en su contra.

**Cuarto Error:** Erró la autoridad nominadora de la ASES al imponer una medida disciplinaria y no ofrecerle una vista administrativa formal o notificarle la determinación final mediante correo certificado con acuse de recibo, según requiere el Reglamento 6294 de la ASES.

**Quinto Error:** la autoridad nominadora de la ASES al imponer una medida disciplinaria porque la Lcda. Lara Nieves no cometió las faltas imputadas.

Por otro lado, el 20 de marzo de 2026, compareció la ASES mediante alegato en oposición.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[1] *Katiria's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Vázquez et al. v. DACo,*

---

[1] *Rolón Martínez v. Supte. Policía,* 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016).

2025 TSPR 56, 216 DPR ___ (2025); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[2]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820.[3] Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra,

---

[2] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.
[3] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626.

pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[4]

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez et al. v. DACo, supra*; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez et al.*

---

[4] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

*v. DACo, supra.* En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

**B. *Debido Proceso de Ley***

La Constitución del Estado Libre Asociado reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad. Const. De PR, Art. II, Sec. 7, LPRA, Tomo I. También dispone que, previo a interferir con los intereses propietarios o libertarios de un ciudadano, el Estado debe cumplir con las exigencias del debido proceso de ley. *Garriga Villanueva v. Municipio de San Juan*, 176 DPR 182, 196 (2009); *Katiria's Café v. Mun. de San Juan*, supra. Similar reconocimiento, sobre la existencia del debido proceso de ley, se encuentra en la Enmienda V y XIV de la Constitución de Estados Unidos. *Hernández v. Secretario*, 164 DPR 390, 394 (2005).

El concepto del debido proceso de ley tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses privados. *PVH Motors v. ASG*, 209 DPR 122, 130 (2022); *Garriga Villanueva v. Municipio de San Juan*, supra, a la pág. 196; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro v. ELA*, 178 DPR 1, 35 (2010).

Dado a que las agencias administrativas, bajo sus funciones administrativas interfieren con los intereses de libertad y propiedad de las personas, las garantías del debido proceso de ley son aplicables a sus procesos. *PVH Motors v. ASG*, supra, pág. 130-131.

Sin embargo, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que en la esfera penal. *Íd.*; *Katiria's Café v. Mun. de San Juan*, supra. Ello, se debe a la necesidad que tienen las agencias de regular las áreas que le han sido delegadas por la Asamblea Legislativa debido a su peritaje en el campo. Aun así, el procedimiento adjudicativo debe de ser uno justo y equitativo. *Báez Díaz v. ELA,* 179 DPR 605, 623 (2010). Es por lo que, el procedimiento adjudicativo frente a las agencias, deberá ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motors v. ASG*, supra, pág. 131; *Alamo Romero v. Adm. de Corrección*, 175 DPR 314 (2009).

En armonía con lo anterior, en los procesos adjudicativos se exige como mínimo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) contar con asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motors v. ASG*, supra, pág. 131; *Katiria's Café v. Mun. de San Juan*, supra.

Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales. *Báez Díaz v. ELA*, *supra*, a la pág. 623.

Mediante la aprobación de la LPAU, la Asamblea Legislativa extendió a los procedimientos adjudicativos de las agencias administrativas ciertas garantías mínimas inherentes al debido proceso de ley", porque, "en su función adjudicativa, las agencias

administrativas intervienen con intereses libertarios y propietarios del ciudadano". *Katiria's Café v. Mun. de San Juan*, supra, citando a *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 329 (2009). Conforme a ello, la sección 3.1 de la LPAU establece:

> En todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:
>
> (A)   Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
>
> (B)   Derecho a presentar evidencia.
>
> (C)   Derecho a una adjudicación imparcial.
>
> (D)   Derecho a que la decisión sea basada en el expediente.[5]

Mediante la garantía del debido proceso de ley, se busca alcanzar una protección en contra de la arbitrariedad, sin que se prive el carácter expedito y flexible de los procesos adjudicativos celebrados ante una agencia administrativa. ". *Katiria's Café v. Mun. de San Juan*, supra.

## C. *Ley de la Administración de Seguros de Salud de Puerto Rico*

La Ley Núm. 72 de 7 de septiembre de 1993, según enmendada, conocida como la Ley de la Administración de Seguros de Salud de Puerto Rico estableció a la Administración de Seguros de Salud de Puerto Rico. La ASES se trata de una corporación pública con plena capacidad para desarrollar las funciones que la ley le encomienda. La Ley Núm. 72-1993, *supra*, le impone a la ASES la responsabilidad de implantar, administrar y negociar, mediante contratos con aseguradores, y/u organizaciones de Servicios de Salud, un sistema de salud.[6] La política pública que establece la aludida ley es que la ASES gestione, negocie y contrate con aseguradoras y proveedores de servicios de salud, para proveer a

---

[5] 3 LPRA sec. 9641.
[6] Art. II de la Ley Núm. 72-1993, *supra*, 24 LPRA sec. 7001.

sus beneficiarios, particularmente a los médico-indigentes, servicios médico-hospitalarios de calidad.[7]

Entre las facultades concedidas a la ASES en virtud de la Ley Núm. 72-1993, *supra*, se encuentra la facultad de aprobar, enmendar y derogar reglamentos con el fin de regir los asuntos y actividades de la ASES, y para prescribir las reglas y normas necesarias para el cumplimiento de sus funciones y deberes, conforme a lo establecido en la Ley de Procedimiento Administrativo Uniforme (LPAU).[8]

### i. *Reglamento de Personal de la Administración de Seguros de Salud de Puerto Rico*

En virtud de los poderes delegados por la Ley Núm. 72-1993, *supra*, la ASES promulgó el *Reglamento de Personal de la Administración de Seguros de Salud de Puerto Rico* (Reglamento de Personal). Asimismo, dicho reglamento se fundamentó en las competencias asignadas a la ASES como entidad excluida, según el Art. 5.2 de la Ley Núm. 8-2017, que permite a la ASES aprobar un reglamento de personal para la administración de recursos humanos que incorpore el principio de mérito.[9] El Reglamento de Personal establece las normativas y los procedimientos que regirán la administración de recursos humanos en la ASES, con el fin de garantizar la observancia del principio de mérito.[10]

El Reglamento de Personal, en su Art. XVII, dispone que, cualquier violación a las normas dispuestas, podría conllevar la aplicación de las acciones correctivas y/o medidas disciplinarias establecidas por la ASES. La acción disciplinaria es definida en el Reglamento de Personal como:

> [S]anción recomendada por el supervisor del empleado e impuesta por la autoridad nominadora. La sanción impuesta formará parte del expediente de personal del

---

[7] *Íd.*; *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 317 (2013).
[8] Art. IV, Sec. 2(g) de la Ley Núm. 72-1993, *supra*, 24 LPRA sec. 7004.
[9] Art. I, Sec. 1.02 del Reglamento de Personal, *supra.*
[10] Art. I, Sec. 1.04 del Reglamento de Personal, *supra.*

empleado. Las sanciones consistirán en Reprimendas Escritas, Amonestaciones Orales, Suspensión de Empleo y Sueldo o Destitución.[11]

Cuando se tenga la intención de imponer alguna medida disciplinaria, se le deberá notificar al empleado mediante una carta de intención. El Reglamento de Personal define la carta de intención de imposición de acción disciplinaria como el documento oficial por medio del cual, el director o personal autorizado le notifica al empleado sobre su intención de imponerle una acción disciplinaria en su contra, por infringir las normas de conducta y/o productividad y eficiencia. La misma esboza los hechos determinados y los cargos administrativos en su contra, conforme a las leyes y los reglamentos aplicables, describe la prueba con la que cuenta la ASES y apercibe del derecho a solicitar vista administrativa informal.[12]

El Reglamento de Personal provee para que, un empleado presente reconsideración cuando esté inconforme con la decisión de la autoridad nominadora. En específico, el artículo XIX del Reglamento de Personal esboza el procedimiento de reconsideración y revisión judicial. A saber:

**Sección 19.01- Reconsideración**

1. Cuando este reglamento disponga un trámite de reconsideración ante una determinación de la ASES, el empleado podrá presentar dentro un término jurisdiccional de diez (10) días calendario siguientes a la notificación, una Solicitud de Reconsideración ante el Departamento de Recursos Humanos.

2. La Solicitud de Reconsideración contendrá de manera clara y específica las alegaciones, los fundamentos, la descripción de la evidencia con que cuenta para sostener las mismas y el remedio solicitado.

3. La autoridad nominadora tomará una determinación final o podrá designar un oficial examinador para atender la Solicitud de Reconsideración.

---

[11] Art. II, Sec. 2.01 (5) del Reglamento de Personal, *supra.*
[12] Art. II, Sec. 2.01 (26) del Reglamento de Personal, *supra.*

4.  El oficial examinador podrá celebrar una vista administrativa informal si considera que es necesaria para una mejor comprensión de la controversia o para solicitar la presentación de prueba adicional que le permita formular sus recomendaciones. La celebración de la vista administrativa informal no será obligatoria, salvo en aquellos casos relacionados con la imposición de medidas disciplinarias que afecten intereses propietarios.

5.  El oficial examinador emitirá un informe para la evaluación de la autoridad nominadora de la ASES, o designado conforme al orden sucesoral, quien notificará la determinación final de la ASES.

Asimismo, el Reglamento de Personal, *supra*, establece que, podrá revisarse ante el Tribunal de Apelaciones la decisión final de la autoridad nominadora mediante una solicitud por escrito, interpuesta dentro del término jurisdiccional de 30 días.[13]

Por otro lado, ante una solicitud de reconsideración, o para atender cualquier reclamo de los empleados bajo el Reglamento de Personal, el director de la ASES de forma discrecional podrá nombrar un oficial examinador para que lleve a cabo los procedimientos administrativos ante la ASES.[14]

De igual manera, el empleado podrá solicitar una vista administrativa informal para que se atienda cualquier planteamiento bajo el reglamento, o cuando el director de la ASES, a su discreción, así lo determine. En la vista informal, no será de aplicabilidad las Reglas de Procedimiento Civil, ni las Reglas de Evidencia. Asimismo, no se aplicará al proceso de vista administrativa informal el derecho de confrontación y descubrimiento de prueba.[15]

En cuanto a la vista administrativa informal, la sección 21.02 dispone lo siguiente:

1.  El oficial examinador presidirá la vista.

---

[13] Art. XIX, Sec. 19.02 del Reglamento de Personal, *supra.*
[14] Art. XX del Reglamento de Personal, *supra.*
[15] Art. XXI, Sec. 21.01 (1)(2) del Reglamento de Personal, *supra.*

2. Se autoriza la celebración de vista mediante videoconferencia y/o teleconferencia híbrida. Así, de permitirlo el oficial examinador, algunas partes podrán comparecer físicamente y otras de modo virtual y / o mediante teléfono.

3. Durante la vista, el empleado podrá exponer su postura respecto a la acción de la ASES, así como de proveer cualquier información o documentación que entienda pertinente al procedimiento.

4. Del empleado no acudir a la vista, sin justa causa, se entenderá que renunció a exponer su posición en cuanto a la acción de la ASES y se procederá a recomendar que se confirme la acción reconsiderada, sin mayor explicación y/o justificación.

5. La vista será sencilla y breve.

6. La vista informal podrá ser grabada por el oficial examinador.

7. El empleado puede comparecer a la vista por sí, o representado por un abogado.

8. El oficial examinador notificará la fecha, hora y lugar en que se celebrará la vista, de así determinarse que procede.

9. La vista deberá celebrarse dentro del término de treinta (30) días laborables contados a partir del recibo de la solicitud, excepto que, por justa causa debidamente consignada en la notificación, fuera necesario modificar el término.

10. Si el empleado presenta justa causa por la cual quede impedido de asistir a la vista y solicita un nuevo señalamiento, se le concederá una segunda y última oportunidad en un término razonable, siempre que la solicitud se realizara, por lo menos, cinco (5) días antes de la fecha de la celebración de la vista.

11. El oficial examinador rendirá un Informe del oficial examinador con sus determinaciones de hechos y las conclusiones de derecho en un término directivo de veinte (20) días laborables, a partir de la celebración de la vista o la presentación de la reconsideración, según corresponda. El término podrá ser extendido, a petición fundamentada del oficial examinador.

12. Recibido el Informe del oficial examinador, el director de la ASES emitirá una determinación final. El director de la ASES podrá acoger, acoger parcialmente o denegar totalmente el Informe del oficial examinador. De existir algún impedimento, tal como un conflicto de interés, la autoridad nominadora nombrará un designado especial, conforme al orden sucesoral de la ASES, quien

tendrá la obligación, como parte de sus funciones, de ejecutar todo aquello que le correspondía a la autoridad nominadora sobre el asunto designado.

13. La ASES notificará a las partes de la determinación final.

14. La notificación apercibirá al empleado de su derecho de acudir en revisión judicial ante el Tribunal de Apelaciones.

Por último, el Reglamento de Personal de 2024 deroga el *Reglamento de Personal* de la ASES de 14 de diciembre de 2020 y cualquier otra enmienda realizada a dicho reglamento durante su vigencia.

### ii. *Manual de Conducta, Medidas Correctivas y Acciones Disciplinarias de la Administración de Seguros de Salud de Puerto Rico.*

El *Manual de Conducta, Medidas Correctivas y Acciones Disciplinarias* de la ASES (Manual de Conducta), fue promulgado en virtud de los poderes otorgados a la Junta de Directores y al director ejecutivo de la ASES, por la Ley Núm. 72-1993, *supra*.[16] El propósito del Manual de Conducta, establece que todos los empleados de la ASES deberán satisfacer los criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en el servicio público. Le corresponde a la ASES establecer tales criterios, tomando en cuenta las funciones de los puestos y los deberes, obligaciones y prohibiciones que establece nuestro ordenamiento jurídico para todos los funcionarios y empleados de la ASES.[17]

Entre las normas de conducta generales, deberes y obligaciones expuestos por el Manual de Conducta, se incluye el realizar de manera eficiente y diligentemente las tareas y funciones asignadas a su puesto y otras compatibles que se le asignen. Incluye, sin limitarse: cumplir con las metas y objetivos asignadas por el supervisor; cumplir con las funciones y la productividad

---

[16] Art. I, Sec. 1.2 del Manual de Conducta.
[17] Art. I, Sec. 1.3 del Manual de Conducta, *supra.*

correspondiente a su posición.[18] Así como, acatar las órdenes e instrucciones de sus supervisores, que sean compatibles con la autoridad delegada a estos y con las funciones, actividades y objetivos de la ASES.[19]

El Manual de Conducta permite a los directores de área advertir, amonestar y reprender, así como recomendar al director de Recursos Humanos reprimenda escrita, la suspensión de empleo y sueldo o la destitución, cuando aplique.[20] De otra parte, el artículo VI del Manual de Conducta expone las medias correctivas y acciones disciplinarias. En particular, la sección 6.2 de dicho artículo dispone que, las acciones disciplinarias podrán ser reprimenda o amonestación verbal o escrita, suspensión de empleo y sueldo, o destitución. Asimismo, expresa que, las faltas, medias correctivas y acciones disciplinarias establecidas en el Manual de Conducta son meramente ilustrativas y no exhaustivas (o taxativas).

En las instancias en las que un empleado incurra en alguna de las faltas enumeradas en el Manual de Conducta o incurra en cualquier conducta considerada perjudicial a los mejores intereses de la ASES, el Manual de Conducta describe el procedimiento disciplinario a seguir. En lo aquí pertinente, la Sección 7.2 establece lo siguiente:

1.  La amonestación o reprimenda verbal o escrita constituyen una acción disciplinaria que se aplica por infracción a las normas de conducta y conlleva la sanción formal al empleado por incurrir en la infracción. Generalmente impuesta por el director o supervisor cuando sea testigo de la conducta o acción incorrecta del empleado. Este le señalará la falta, sea mediante una amonestación o reprimenda verbal o escrita.

2.  Esta medida se considerará una acción disciplinaria y formará parte del expediente del personal del empleado. Se mantendrá evidencia sobre la imposición de esta medida en el expediente de personal del empleado, no obstante, al no

---

[18] Art. IV, Sec. 4.1(5) del Manual de Conducta, *supra.*
[19] Art. IV, Sec. 4.1(6) del Manual de Conducta, *supra.*
[20] Art. V, Sec. 5.2(2) del Manual de Conducta, *supra.*

afectarse el interés propietario del empleado, no tendrá derecho a una vista administrativa informal.

3. Si luego de la formulación de cargos y de la celebración de una vista administrativa informal, el director ejecutivo decide imponer una amonestación o reprimenda verbal o escrita como una sanción – menos drástica siguiendo los parámetros de las guías –, no procederá derecho de revisión.

4. [...]

5. En cuanto a reprimendas escritas:

   a. Preparará una comunicación en la que se indique una relación de hechos y la norma de conducta que se infringe;

   b. Dicha comunicación exhortará al empleado a corregir la falta de conducta incurrida;

   c. La comunicación podrá hacer referencias a advertencias, amonestaciones o reprimendas anteriores, de existir alguna (la omisión de esto no constituirá un desconocimiento de la ASES de dicha advertencia, amonestación o reprimenda);
   [...][21]

El director ejecutivo de la ASES se encuentra facultado para suspender de empleo y sueldo o destituir a cualquier empleado de carrera por justa causa. Lo anterior se encuentra condicionado a que previamente emita una notificación de formulación de cargos por escrito y apercibimiento de su derecho a una vista previa informal, para garantizar el derecho a ser oído como parte del debido proceso de ley.[22] El mismo artículo dispone que "[l]a suspensión de empleo y sueldo o la destitución constituyen una acción disciplinaria que se aplica por infracción a las normas de conducta y conlleva la sanción formal al empleado por incurrir en la infracción".[23]

---

[21] Art. VII, Sec. 7.2 del Manual de Conducta, *supra.*
[22] Art. VII, Sec. 7.3 del Manual de Conducta, *supra.*
[23] *Íd.*

En cuanto a la formulación de cargos, estas deberán contener lo siguiente:

    a.   La base legal que faculta al director ejecutivo a tomar tal acción.

    b.   La descripción de los hechos que se le imputan al empleado.

    c.   La relación de normas y deberes infringidos, por los cuales se tiene la intención de aplicar acción disciplinaria.

    d.   La acción disciplinaria o sanción aplicable, y la intención de aplicar la misma.

    e.   La notificación del derecho a solicitar vista administrativa informal, previo a que se le aplique la acción disciplinaria, ante un oficial examinador.

    f.   El apercibimiento del derecho a solicitar una vista administrativa informal para ser oído y explicar su versión de los hechos dentro de un término de diez (10) días calendario contados a partir de la fecha del recibo de la formulación de cargos.

    g.   La notificación de que durante la vista administrativa informal tendrá el derecho a estar representado por un abogado y presentar la evidencia que entienda pertinente.

    h.   Se notificará que la formulación de cargos formará parte del expediente de personal.

    i.   Se le apercibirá de las consecuencias de no solicitar la celebración de vista informal, advirtiendo que, si no solicita la vista dentro del término de diez (10) días establecido, se procederá a imponer la medida disciplinaria notificada.[24]

Respecto a la vista informal, el Manual de Conducta estipula lo siguiente:

**Sección 7.5. Vista informal en casos de suspensión o destitución**

1.   El empleado que lo desee deberá solicitar por escrito al director ejecutivo la vista informal en un período no mayor de diez (10) días a partir del recibo de la notificación de la intención de imposición de acción disciplinaria.

2.   La no presentación la solicitud de vista informal por parte del empleado dentro del término de diez (10) días, se entenderá como una renuncia a la vista informal.

---

[24] Art. VII, Sec. 7.4(1) del Manual de Conducta, *supra.*

3.  Una vez solicitada la vista informal, la ASES tendrá diez (10) días para indicarle la fecha de la vista informal ante el Oficial Examinador.

4.  En torno a la vista informal,

    a. En la vista informal, el empleado tendrá la oportunidad de exponer su posición respecto a la intención de imposición de acción disciplinaria de suspensión o destitución, así como de proveer cualquier información o documentación que estime pertinente al proceso.

    b. Si el empleado presenta excusa por la cual está impedido de asistir a la vista administrativa informal y solicita un nuevo señalamiento, se le concederá una segunda y última oportunidad en un término razonable, siempre y cuando dicha solicitud se haya realizado con por lo menos cinco (5) días de anticipación a la fecha pautada para la vista administrativa informal.

    c. Del empleado no acudir a la vista informal, se entenderá que ha renunciado a exponer su posición en cuanto a la intención de una acción disciplinaria.

    d. Los mecanismos de descubrimiento de prueba, las Reglas de Evidencia y el derecho de confrontación de prueba no aplicarán en el proceso de vista informal.

    e. La vista informal deberá ser grabada por el oficial examinador.

    f. Una vez celebrada la vista informal, el oficial examinador emitirá su recomendación por escrito mediante un informe dirigido al director ejecutivo para que tome la determinación final.

    g. El informe deberá incluir un resumen procesal; determinaciones de hecho, las disposiciones legales o reglamentarias infringidas; conclusiones de derecho y su recomendación sobre la imposición de las medidas disciplinarias. Además, entregará un borrador de la carta de determinación final de acción disciplinaria para consideración del director ejecutivo.

    h. El director ejecutivo podrá acoger la acción disciplinaria recomendada, modificarla, o rechazarla. El director ejecutivo no estará obligado a aceptar la recomendación y podrá tomar otra decisión que, según su discreción, sea la apropiada.

Le corresponderá al director ejecutivo notificar al empleado su decisión de archivar o de imponer una acción disciplinaria. La

notificación de la medida disciplinaria deberá incluir y exponer de forma separada:

a.  Determinaciones de hechos, si estas no se han renunciado.

b.  Disposiciones legales o reglamentarias infringidas.

c.  La acción disciplinaria a imponerse.

d.  La fecha o el periodo de efectividad de la acción disciplinaria.

e.  Apercibimiento de su derecho de presentar un recurso de revisión administrativa ante el Tribunal de Apelaciones, dentro del término jurisdiccional de treinta (30) días contados desde la fecha de notificación.

f.  En los casos de destitución, la notificación deberá informar al empleado que la medida disciplinaria tiene el efecto de declararlo inelegible para tomar exámenes y ocupar cargos públicos en el futuro, a menos que se someta al proceso de habilitación dispuesto en la Sección 6.8 de la Ley Núm. 8, *supra*.

g.  Notificará que la determinación final formará parte del expediente de personal.[25]

La notificación deberá diligenciarse personalmente, haciéndose constar por la parte su recibo, o podrá (i) remitirse por correo electrónico, o (ii) por correo certificado con acuse de recibo a la dirección informada por las partes o, (iii) en su defecto, a la última dirección de correo electrónico o postal que aparezca en el expediente de personal.[26]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su *primer señalamiento de error*, la parte recurrente sostiene que, la autoridad nominadora de la ASES incidió al imponer una sanción disciplinaria mediante un procedimiento que violentó sus derechos constitucionales.

---

[25] Art. VII, Sec. 7.7(2) del Manual de Conducta, *supra.*
[26] Art. VII, Sec. 7.7(3) del Manual de Conducta*, supra.*

Como *segundo señalamiento de error*, la licenciada Lara Nieves aduce que, ASES se equivocó y violentó su derecho constitucional a un debido proceso de ley, al no proveerle una descripción adecuada de la prueba en su contra previo o durante la celebración de la vista administrativa informal.

En el *tercer señalamiento de error*, la parte recurrente arguye que, la parte recurrida erró al imponerle una sanción disciplinaria y no ofrecerle la oportunidad anterior o posterior a la imposición de esta, de un proceso administrativo formal a base de un récord administrativo completo y con conocimiento de la evidencia en su contra.

Por encontrarse intrínsecamente relacionados, discutiremos dichos señalamientos de error de forma conjunta. Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, el 21 de octubre de 2025, el director ejecutivo de la ASES le remitió a la licenciada Lara Nieves la carta de formulación de cargos e intención de suspensión de empleo y sueldo. En dicha carta, se le notificó a la licenciada Lara Nieves la intención de imponerle una medida disciplinaria, por alegadamente haber incurrido en múltiples violaciones a las normas de conducta y desempeño, aplicables a los empleados de la ASES. De acuerdo con la formulación de cargos, la parte recurrente incurrió en las faltas disciplinarias 23, 28, 31, 39, 55, 109, 151 y 182 del Manual de Conducta de la ASES. Según la ASES, la parte recurrente "insistió injustificadamente en no cumplir y evadir su obligación de emitir certificaciones de corrección del contenido de contratos, y/o ha expedido certificaciones inoficiosas". Cabe señalar que, la formulación de cargos incluyó una descripción de los sucesos relacionados a las alegadas infracciones. De igual forma, hizo alusión de forma detallada a los documentos y contratos que, la

licenciada Lara Nieves se había negado certificar. Así como, unas

certificaciones emitidas por esta.

En la misma carta, la parte recurrida indicó que, la licenciada

Lara Nieves había emitido dos certificaciones inoficiosas con

relación al contenido del contrato 2026-000035 y la enmienda 2026-

000035A, a saber:

La primera certificación emitida el 15 de octubre de 2025, cita:

[e]n el desempeño de las funciones como empleado
público en el puesto de carrera como Abogado S[e]nior
en las ASES, se redactó el contrato 2026-000035
correspondiente a Dr. Felipe Carro Rivera, el cual se
otorga de manera excepcional. La Lcda. Álida Lara
Nieves redactó el antes mencionado contrato según las
instrucciones para la redacción de este provistas por la
Oficina Ejecutiva y con la información suplida por las
Áreas de la ASES, que intervienen en el proceso de
contratación gubernamental se toma[n] por buenas y
correctas tras ser remitidas por las personas con la
pericia para ello. Esta suscribiente no tiene el acceso,
ni la pericia para corroborar la corrección y veracidad
de la información suministrada por las distintas Áreas
de la ASES.

La segunda certificación emitida el 16 de octubre de 2025,

cita:

[e]n el desempeño de las funciones como empleado
público en el puesto de carrera como Abogado S[e]nior
en la ASES, se revisó el contrato 2023-000048A
correspondiente a la enmienda del contrato de Abarca.
La Lcda. Álida Lara Nieves, revisó el antes mencionado
contrato, a mi mejor entendimiento están redactadas de
conformidad con el ordenamiento jurídico vigente y
aplicable y el mismo está aprobado por la Junta de
Supervisión Fiscal. La información provista por las
Áreas de ASES, que intervienen en el proceso de
contratación gubernamental se toma[n] por buenas y
correctas tras ser remitidas por las personas con la
pericia para ello. Esta suscribiente no tiene el acceso,
ni la pericia para corroborar la corrección y veracidad
de la información suministrada por las distintas Áreas
de la ASES.

De igual manera, la formulación de cargos señaló que, el 16

de octubre de 2025, la licenciada Lara Nieves se reunió con la

dirección ejecutiva de ASES, donde esta le informó a la Sra. Lymari

Colón Rodríguez que no había logrado completar la certificación de

servicio de *Supplemental Rebates* del contrato de Abarca Health

2023-000048A para la firma del Director Ejecutivo. De acuerdo a la formulación de cargos, en dicha reunión la licenciada Lara Nieves sostuvo que no podía certificar la enmienda al contrato puesto que le faltaban documentos, y no contaba con la documentación respecto a la aprobación de la Junta de Supervisión Fiscal (FOMB por sus siglas en inglés). Asimismo, se desprende de la formulación de cargos que a la parte recurrente "se le aclaró y recordó que toda la documentación requerida por la FOMB y que resultó en la aprobación de la enmienda en el mes de agosto de 2025, le había sido remitida, mediante correo electrónico". Además, le explicaron los detalles de los requerimientos para el proceso de enmienda, y posteriormente, se le remitieron otros documentos que necesitaba.

De acuerdo a la formulación de cargos, entre las funciones del puesto de Abogado Senior se requiere redactar y revisar todo tipo de documentos legales, tales como: opiniones, memorandos, cartas, contratos, mociones y ponencias de la Corporación para la Legislatura de Puerto Rico, Fortaleza, Oficina de Gerencia y Presupuesto, FOMB, Medicaid y CMS; así como la de orientar a los supervisores y empleados sobre derechos, obligaciones y todos aquellos asuntos legales pertinentes y necesarios para el mejor funcionamiento de la Corporación.

En cuanto a las faltas cometidas, la ASES esbozó las medidas disciplinarias que estas conllevaban. Las aludidas medidas fluctuaban entre reprimenda escrita, suspensión de empleo y sueldo desde 3 días, 15 días o 30 días, hasta la destitución.

Por otro lado, en la formulación de cargos se determinó imponerle una sanción disciplinaria a la parte recurrente. Dicha sanción consistía en la suspensión de empleo y sueldo por un término de 30 días laborables. Además, se le apercibió a la parte recurrente el derecho de solicitar una vista administrativa informal, ante un oficial examinador para ejercer su derecho a ser escuchada,

proveer su versión de los hechos, y/o presentar cualquier argumento o defensa con relación a la notificación de formulación de cargos, y acudir acompañada de representación legal.

Posteriormente, la parte recurrente solicitó la celebración de una vista informal. Consecuentemente, el Oficial Examinador emitió *Citación* donde calendarizó la celebración de la vista informal. Además, incluyó una disposición sobre la prueba considerada para la formulación de cargos. En específico, las instrucciones y comunicaciones emitidas por la autoridad nominadora de la ASES, que surgían de la formulación de cargos. Así como, cualquier otra instrucción verbal relacionada con los hechos, y los borradores de los contratos y documentos pertinentes, en posesión de la licenciada Lara Nieves, por ser esta quien los redactó. Más adelante, fue celebrada la vista informal, donde la parte recurrente tuvo la oportunidad de presentar prueba a su favor, argumentar, ser oída y comparecer con su representante legal.

Finalmente, la ASES emitió la *Resolución* recurrida, donde determinó que la licenciada Lara Nieves incurrió en las faltas disciplinarias 23, 28, 31, 39, 55, 109, 151 y 182 del Manual de Conducta, *supra.* Asimismo, reseñó que, pese a que el Informe del Oficial Examinador recomendaba la suspensión de empleo y sueldo por un término de 30 días, dado a que constituía la primera falta de la recurrente, redujo la sanción a una suspensión de empleo y sueldo por un periodo de cinco días laborables.

Conforme reseñamos, debido a que las agencias administrativas, bajo sus funciones administrativas interfieren con los intereses de libertad y propiedad de las personas, las garantías del debido proceso de ley son aplicables a sus procesos.[27] No obstante, en el derecho administrativo el debido proceso de ley no

---

[27] *PVH Motors v. ASG*, supra, pág. 130-131.

tiene la misma rigidez que en la esfera penal.[28] Ello, se debe a la necesidad que tienen las agencias de regular las áreas que le han sido delegadas por la Asamblea Legislativa debido a su peritaje en el campo. El procedimiento adjudicativo frente a las agencias, deberá ceñirse a las garantías mínimas del debido proceso de ley.[29]

Es por lo que, al momento de separar a un empleado público de su puesto, de ordinario se requiere la celebración de una vista informal que deberá incluir una notificación adecuada de los cargos en su contra y una descripción de la prueba que posee el patrono. Asimismo, la vista deberá proveerle una oportunidad al empleado para presentar su versión de los hechos.[30]

En lo pertinente al caso de epígrafe, la ASES está facultada para aprobar, enmendar y derogar reglamentos con el fin de regir los asuntos y actividades de la ASES, y para prescribir las reglas y normas necesarias para el cumplimiento de sus funciones y deberes, conforme a lo establecido en LPAU.[31] Conforme a dichas facultades, fue promulgado el Reglamento de Personal, *supra.* Dicho reglamento, establece que, cualquier violación a las normas dispuestas, podría conllevar la aplicación de las acciones correctivas y/o medidas disciplinarias establecidas por la ASES. Cuando se tenga la intención de imponer alguna medida disciplinaria, se le deberá notificar al empleado mediante una carta de intención. Esta deberá esbozar los hechos determinados y los cargos administrativos en su contra, conforme a las leyes y los reglamentos aplicables. Además, debe incluir una descripción de la prueba con la que cuenta la ASES y apercibir el derecho a solicitar una vista administrativa informal. De acuerdo al Reglamento de Personal, *supra*, y al Manual de Conducta, *supra*, en la vista informal no serán

---

[28] *Íd.*; *Katiria's Café v. Mun. de San Juan*, supra.
[29] *PVH Motors v. ASG*, supra, pág. 131; *Alamo Romero v. Adm. de Corrección*, 175 DPR 314 (2009).
[30] Véase *Garriga Villanueva v. Mun. de San Juan*, 176 DPR 182, 197 (2009).
[31] Art. IV, Sec. 2(g) de la Ley Núm. 72-1993, *supra*, 24 LPRA sec. 7004.

aplicables las Reglas de Procedimiento Civil, ni las Reglas de Evidencia, y será sencilla y breve. De igual manera, en la vista el empleado podrá exponer su postura en cuanto a la acción de la ASES, así como proveer cualquier información o documentación que entienda relevante al procedimiento. Igualmente, el Reglamento de Personal, *supra,* provee para que el empleado pueda comparecer a la vista informal por sí, o representado por un abogado.

En esa misma línea, el Manual de Conducta, *supra,* establece el procedimiento a seguir en las instancias en la que un empleado incurra en alguna falta o en cualquier conducta considerada perjudicial a los mejores intereses de la ASES. El mismo establece que, el director de la ASES está facultado para suspender de empleo y sueldo o destituir a cualquier empleado de carrera por justa causa. Empero, se encuentra condicionado a que previamente emita una notificación de formulación de cargos por escrito y apercibimiento de su derecho a una vista previa informal, **para garantizar el derecho a ser oído como parte del debido proceso de ley**.[32] La formulación de cargos debe contener, entre otras cosas, la descripción de los hechos que se imputan; la relación de normas y deberes infringidos, por los cuales se tiene la intención de aplicar acción disciplinaria; la acción disciplinaria o sanción aplicable, y la intención de aplicar la misma; el derecho a solicitar vista informal para ser oído y explicar su versión de los hechos y el apercibimiento de que tendrá derecho a ser representado por un abogado en la vista y a presentar la evidencia que entienda pertinente.[33]

Según los planteamientos de la parte recurrente, se le violentó el debido proceso de ley ya que, esta entiende que la formulación de cargos no constituyó una notificación adecuada exigida por el derecho constitucional. También razonó que el término máximo que

---

[32] Art. VII, Sec. 7.3 del Manual de Conducta, *supra.*
[33] Art. VII, Sec. 7.4(1) del Manual de Conducta, *supra.*

permiten las faltas imputadas a tenor con el Manual de Conducta, *supra*, es de 15 días calendario. Además, argumentó que, la formulación de cargos no contenía una descripción de la prueba con la que contaba ASES en su contra. Asimismo, arguyó que, le violentaron el derecho a un debido proceso de ley al no ofrecerle la opción de solicitar una vista formal y únicamente tener disponible la opción de revisión judicial.

En primer lugar, de un examen de la formulación de cargos, se puede constatar que, en efecto, esta incluyó una descripción de la prueba en contra de la licenciada Lara Nieves en cuanto a las faltas cometidas. Pues, específicamente la formulación de cargos se basó en el incumplimiento de la parte recurrente con las solicitudes e instrucciones de la autoridad nominadora y por las certificaciones emitidas por la misma recurrente. Especifica de manera clara los hechos, las conversaciones, y documentos que forman parte del expediente y que iniciaron la posible imposición de medidas disciplinarias. De hecho, en la *Citación* para la vista informal, emitida por el Oficial Examinador, se reitera que la prueba se desprendía de la formulación de cargos según ya reseñamos. La parte recurrente sostiene que el hecho de que el Oficial Examinador incluyera la prueba a presentarse reflejaba un conflicto de interés, sin embargo, esta no logró demostrar dicho conflicto. Pues, mediante la *Citación* el Oficial Examinador reiteró la prueba que ya había sido descrita en la formulación de cargos, conforme al Reglamento de Personal, *supra*, y al Manual de Conducta, *supra*.

De otro lado, no es correcto que, el término máximo que permiten las faltas imputadas a tenor con el Manual de Conducta, *supra*, es de un máximo de 15 días calendario. A la parte recurrente, se le imputaron las faltas número 23, 28, 31, 39, 109, 151 y 182. Conforme al Manual de Conducta, *supra*, las faltas cometidas, como

primera ofensa, conllevan la siguiente sanción disciplinaria disponible:

- Falta número 23: **mínimo** – reprimenda escrita; **máximo** – suspensión de empleo y sueldo hasta 15 días.

- Falta número 28: **mínimo** – Suspensión de empleo y sueldo desde tres días; **máximo** – suspensión de empleo y sueldo hasta 15 días.

- Falta número 31: **mínimo** – Reprimenda escrita; **máximo** – suspensión de empleo y sueldo hasta 15 días.

- Falta número 39: **mínimo** – Reprimenda escrita; **máximo** – suspensión de empleo y sueldo hasta 15 días.

- Falta número 55: **mínimo/máximo** – Reprimenda escrita.

- Falta número 109: **mínimo/máximo** – destitución.

- Falta número 151: **mínimo** – Reprimenda escrita; **máximo** – suspensión de empleo y sueldo hasta 30 días.

- Falta número 182: **mínimo** – suspensión de empleo y sueldo desde tres días; **máximo** – suspensión de empleo y sueldo hasta 15 días.

Se puede observar que, en las faltas señaladas hay opciones de reprimendas desde amonestación escrita, hasta suspensión de empleo y sueldo de 15 a 30 días, así como destitución.

Es menester señalar que, la carta de formulación de cargos menciona que, las acciones cometidas por la licenciada Lara Nieves constituyen **faltas graves**. Las faltas graves son descritas en el Manual de Conducta, *supra*, como:

> [i]nfracción a las normas y reglamentos, que puede ocasionar serios perjuicios a la ASES, al personal, a las personas que reciben servicios de la ASES, a las compañías aseguradoras, proveedores u organizaciones de servicios de salud que contratan con la ASES o la propiedad de la ASES. Es una falta que amerita pronta atención e imposición de medidas disciplinarias porque atenta contra la seguridad, la moral, la salud o la misión de ASES. Debido a la naturaleza de la falta cometida **conlleva una sanción mínima de suspensión de empleo y sueldo por 30 días laborables** hasta la destitución.[34]

---

[34] Art. III, Sec. 3.2 (23) del Manual de Conducta, *supra.*

Mediante la formulación de cargos, se le notificó a la parte recurrente la intención de imponerle la medida disciplinaria de suspensión de empleo y sueldo por un término de 30 días laborables. Es decir, la ASES notificó dicha intención dentro de los parámetros disponibles en el Manual de Conducta, *supra.*

Pese a lo anterior, y a que el Oficial Examinador sugirió la imposición de la aludida medida disciplinaria, la ASES, decidió no acoger tal recomendación y ejerció su facultad discrecional al imponerle un término menor al sugerido. Dado a que constituía la primera falta de la licenciada Lara Nieves, la autoridad nominadora optó por imponerle una medida disciplinaria de cinco días de suspensión de empleo y sueldo. Es decir, le impuso una sanción disciplinaria menos onerosa, aun teniendo disponibles otras más severas conforme al Manual de Conducta, *supra.*

Cabe destacar que, la Sección 6.2 del Manual de Conducta, *supra,* expresamente establece que "las faltas, medidas correctivas y acciones disciplinarias que se establecen en este manual son meramente ilustrativas y no exhaustivas (o taxativas)".

Por otro lado, somos del criterio que a la parte recurrente se le honraron las garantías mínimas del debido proceso de ley. Puesto que, mediante la formulación de cargos le informaron adecuadamente los cargos en su contra, se le ofreció la oportunidad de solicitar la celebración de una vista informal, donde tuvo oportunidad de exponer su posición, ser oída, presentar prueba a su favor y estar representada por un abogado. El aludido procedimiento fue conforme a los estándares acentuados en el Reglamento de Personal, *supra* y en el Manual de Conducta*, supra.*

La parte recurrente en el *cuarto señalamiento de error,* sostiene que, la ASES incidió al imponer una medida disciplinaria y no ofrecerle una vista administrativa formal o notificarle la

determinación final mediante correo certificado con acuse de recibo, según requiere el Reglamento 6294.

Adelantamos que, no le asiste la razón. Veamos.

En primer lugar, es necesario destacar que, el Reglamento de Personal vigente es el aprobado el 22 de noviembre de 2024. La parte recurrente señaló que, el Reglamento de Personal Núm. 6294 continuaba vigente y que no surgía que hubiere sido derogado. Contrario a lo argumentado por la parte recurrente, el Reglamento de Personal Núm. 6294 fue *expresamente derogado* por el Reglamento de Personal de 9 de diciembre de 2020. En específico, el Capítulo IX de este último reza:

> Las disposiciones de este Reglamento **derogarán el Reglamento de Personal, Reglamento Núm. 6294 aprobado el 2 de febrero de 2001**. De igual forma, este Reglamento deja sin efecto toda reglamentación, carta normativa, orden administrativa, política, procedimiento, manual, instrucción, o cualquier otro tipo de norma de la ASES, que contravenga o entre en conflicto con sus disposiciones. (*Énfasis suplido*).

Posteriormente, el Reglamento de Personal de 2024, *supra,* derogó al Reglamento de Personal de 2020. Por lo tanto, las disposiciones aplicables al caso de epígrafe son las del Reglamento de Personal de 2024.

Conforme al Reglamento de Personal de 2024, *supra,* la ASES no tenía que ofrecerle una vista formal a la parte recurrente. Pues, dicho reglamento no exige la celebración de una vista formal, y se limita a ofrecer la opción de celebrar una vista informal en aquellos casos relacionados con la imposición de medidas disciplinarias que afecten intereses propietarios.[35] Según el aludido reglamento, posterior a la celebración de la vista informal, la ASES emitirá una determinación final que se les notificará a las partes. Aunque el Reglamento de Personal, *supra,* no especifica cómo deberá notificarse la determinación, el Manual de Conducta dispone que

---

[35] Art. XIX, Sec. 19.01 del Reglamento de Personal, *supra.*

esta deberá diligenciarse personalmente, haciéndose constar por la parte su recibo, o podrá (i) remitirse por correo electrónico, o (ii) por correo certificado con acuse de recibo a la dirección informada por las partes o, (iii) en su defecto, a la última dirección de correo electrónico o postal que aparezca en el expediente de personal.[36]

En el caso de epígrafe, a la parte recurrente se le notificó la *Resolución Final* de manera personal y de la misma surge que esta hizo constar su recibo por medio de su firma. Es decir, la parte recurrente fue notificada según exige el Manual de Conducta.

Conforme a lo anterior, los planteamientos de la parte recurrente carecen de méritos.

En su *quinto* señalamiento de error, la parte recurrente alude que ASES incidió al imponerle una medida disciplinaria dado a que esta no cometió las faltas imputadas.

Según reseñáramos, la ASES le requirió a la parte recurrente la certificación de corrección de las enmiendas del contrato 2026-000035A, con el propósito de que finalmente este pudiera formalizarse. Pese a dichos requerimientos, la licenciada Lara Nieves se limitó a emitir dos certificaciones donde esbozó que, a su mejor entendimiento, las enmiendas se tomaban por buenas y correctas, tras ser remitidas por las personas con la pericia para ello. Sin embargo, señaló que, no contaba con el acceso ni la pericia para corroborar la corrección y veracidad de la información suministrada por las distintas áreas de la ASES.

La ASES concluyó que, la parte recurrente había incurrido en múltiples incumplimientos con funciones esenciales de su puesto como Abogada Senior en la Oficina de Asuntos Legales de la ASES. Tal incumplimiento, según la *Resolución*, se basó en "actos de insubordinación, dilación injustificada en la ejecución de tareas

---

[36] Art. VII, Sec. 7.7(3) del Manual de Conducta, *supra.*

medulares, omisión en la preparación de certificaciones requeridas por la autoridad nominadora y la emisión de certificaciones inoficiosas que no cumplían con el propósito institucional". De igual forma, determinó que, la parte recurrente "fue negligente y no siguió instrucciones emitidas por funcionarios de mayor jerarquía, lo que provocó el atraso en la tramitación de la enmienda del contrato 2023-000048A y ocasionó pérdida de ingresos a la ASES".

Como parte de las normas de conducta generales, deberes y obligaciones expuestos por el Manual de Conducta, se encuentra el realizar de manera eficiente y diligentemente las tareas y funciones asignadas a su puesto y otras compatibles que se le asignen. Incluye, sin limitarse a: cumplir con las metas y objetivos asignadas por el supervisor; cumplir con las funciones y la productividad correspondiente a su posición.[37] Así como, **acatar las órdenes e instrucciones de sus supervisores, que sean compatibles con la autoridad delegada a estos y con las funciones, actividades y objetivos de la ASES**.[38]

De otra parte, como ya reseñamos, el puesto de Abogado Senior dentro de sus funciones requiere redactar y revisar todo tipo de documentos legales, tales como: opiniones, memorandos, cartas, contratos, mociones y ponencias de la Corporación para la Legislatura de Puerto Rico, Fortaleza, Oficina de Gerencia y Presupuesto, FOMB, Medicaid y CMS; así como la de orientar a los supervisores y empleados sobre derechos, obligaciones y todos aquellos asuntos legales pertinentes y necesarios para el mejor funcionamiento de la Corporación.

De una mirada al expediente se desprende que, la ASES le solicitó a la licenciada Lara Nieves en múltiples ocasiones que emitiera una certificación de corrección del contrato en cuestión. No

---

[37] Art. IV, Sec. 4.1(5) del Manual de Conducta, *supra*.
[38] Art. IV, Sec. 4.1(6) del Manual de Conducta, *supra*.

obstante, esta expresaba que se encontraba imposibilitada de emitir la certificación requerida por motivo de que no contaba con unos documentos que entendía necesarios. De acuerdo al expediente, mediante intercambios de correos electrónicos se le remitieron los documentos necesarios para la emisión de la certificación e incluso, se le hizo saber que estaban la disposición de proveerle cualquier otro documento que necesitara.

La parte recurrente tenía el deber de cumplir con los requerimientos de su puesto, así como con las instrucciones impartidas por la autoridad nominadora. Si bien es cierto que esta emitió una certificación, coincidimos con la ASES que esta fue inoficiosa. Lo anterior, en la medida en que la licenciada Lara Nieves, no pudo dar constancia de la corrección de la enmienda del contrato. Esta se limitó a expresar que no contaba con la pericia necesaria para corroborar la corrección y veracidad de la información suministrada por las distintas áreas de la ASES. Es decir, no pudo asegurar si dicha información suministrada era correcta. Lo que hace de la certificación una inoficiosa.

Dado a que la parte recurrente incumplió con sus funciones, esta cometió las faltas imputadas. Por lo cual, proceden las sanciones impuestas por la autoridad nominadora.

**IV**

Por los fundamentos que anteceden, se *confirma* la resolución recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. El Juez Pagán Ocasio disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones